UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

| | | |
|---|---|---|
| SHERNARD C. STEWART, | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| MOCCASIN BEND MENTAL HOSPITAL, | ) | Case No. 1:07-cv-305 |
| CYNTHIA HONEYCUTT, NANCY HOOPER, | ) | Magistrate Judge Carter |
| CHARLYNNE PARSON, ROB CATHERMAN, | ) | |
| JANET WILLIAMS, ABIGAIL HAMMONDS, | ) | |
| WILLIAM VENTRESS, HOLLY METCALF, | ) | (Lead Case) |
| TERRY JONES, DOUGLAS BENNETT, | ) | |
| SONNY SLATER, SCOTT LINDSAY | ) | |
| Defendants. | ) | |
| | ) | Consolidated |
| SHERNARD C. STEWART, | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | Case No. 1:08-cv-255 |
| TENNESSEE CIVIL SERVICE COMMISSION, | ) | Magistrate Judge Carter |
| Defendant. | ) | |

MEMORANDUM

I. Introduction

Before the Court is the motion to dismiss [Doc. 126] filed on August 11, 2009 by

Moccasin Bend Mental Hospital (Moccasin Bend); and Cynthia Honeycutt, Nancy Hooper,

Charlynne Parson, Rob Catherman, Janet Williams, Abigail Hammonds, William Ventress,

Holly Metcalf, Terry Jones, Douglas Bennett, Sonny Slater, and Scott Lindsay (referred to

1

collectively as "individual defendants"); and the Tennessee Civil Service Commission (TCSC). The plaintiff has filed a response to the motion [Doc. 128] and the motion is ripe for review. For the reasons stated herein, the motion is GRANTED.

## II.  Background

Defendants in this consolidated action previously filed a motion to dismiss which the Court addressed in a Memorandum and Order entered on July 24, 2009. In the July 24, 2009 Memorandum and Order, the Court considered which of plaintiff's claims were barred by Eleventh Amendment Immunity and which were not. After determining which claims survived Eleventh Amendment Immunity, the Court advised the plaintiff of the following:

> the plaintiff's consolidated complaint is very difficult to understand. The plaintiff seems to assume, incorrectly, that the Court is aware of many facts and incidents which form the basis of his lawsuit, and therefore, the plaintiff has left this information out of his consolidated complaint. The Court has a very incomplete picture of what the plaintiff believes the defendants did or did not do which led him to file this lawsuit. The plaintiff has filed numerous documents with the Court, but the Court cannot comb through these documents and try to piece together the plaintiff's claims from them. These documents are not part of the consolidated complaint, *see* Fed. R. Civ. P. 8(a), and the Court will not consider them in reviewing the adequacy of the plaintiff's consolidated complaint. Since the Court may have given the plaintiff the incorrect impression that the extraneous documents he filed in the Court record would be considered as part of the complaint, the Court will give the plaintiff time to amend his consolidated complaint in order to add factual allegations.

(July 24, 2009 Memorandum and Order, Doc. 118 at p. 11). To this end, the Court instructed the plaintiff that he could not add new claims but that he could amend his consolidated complaint to "more fully explain the basis for the claims he has already asserted in his consolidated complaint." *Id.* The Court further instructed the plaintiff that

> [a] short and plain statement of the plaintiff's claims should contain all the facts necessary for the Court to understand what happened to the plaintiff and why he is

2

bringing this lawsuit. It should explain what each defendant did or did not do which caused the plaintiff to sue the defendant. In other words, the plaintiff needs to tell his "story" as clearly as he can.

The Court gave the plaintiff until September 16, 2009 to file an amended complaint and urged the plaintiff to obtain legal counsel to help him with this action. *Id.* at 12 n. 2 ("The Court is aware that it is very difficult for a non-lawyer to represent himself in federal court. Therefore, the Court urges the plaintiff to try to find an attorney to represent him in this matter.")

Only three days after the Court entered its order, on July 27, 2009, plaintiff filed an amended complaint [Doc. 120] in Case No. 1:07-cv-305. The amended complaint is a very short, one page document and does not include the written instruments that the plaintiff attached to his original complaint. [*See* Doc. 5]. Because the plaintiff is acting *pro se* and because the purpose of allowing plaintiff to amend the complaint was to permit him to provide further facts about his existing claims, the Court will consider the instruments attached to his original complaint as instruments attached to his amended complaint. Thus, these instruments are considered part of the amended complaint in Case No. 1:07-cv-305. *See* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.") Further, it does not appear to the Court that the plaintiff intended to file an amended complaint in Case No. 1:08-cv-255 which is brought against the TCSC. The amended complaint filed July 27, 2009 bears "Case No. 1:07-cv-305" only. Thus, the Court will consider the original complaint [Doc. 4] filed in Case No. 1:08-cv-255 to be part of the consolidated complaint in this consolidated

3

action.¹ Defendants now move for dismissal of this action pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim for which relief can be granted.

### III. Standard of Review

Fed. R. Civ. P. 8(a) requires that the complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." A motion to dismiss brought pursuant to Fed. R. Civ. P. 12(b)(6) is meant to test the sufficiency of the complaint; it does not resolve the facts of the case. *Cox v. Shelby State Community College*, 48 Fed. Appx. 500, 503 (6th Cir. Sept. 24, 2002) (unpublished); *Metz v. Supreme Court of Ohio*, 46 Fed. Appx. 228, 233 (6th Cir. Aug. 19, 2002). In determining whether a party has set forth a claim in his complaint for which relief can be granted, all well-pleaded factual allegations contained in the complaint must be accepted as true. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam). This tenet does not apply to legal conclusions set forth in a complaint. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (May 18, 2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S.Ct. at 1949. More than "unadorned, the-defendant-unlawfully-harmed me accusation[s]" are required to state a claim. *Id.* at 1949. "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* at 1949 (brackets original)(quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S 544, 557 (2007)). Further, the complaint must also state "a plausible claim." *Id.* at 1950. Plausibility has been defined by the Supreme Court in the following manner:

---

¹To be clear, the consolidated complaint presently before the Court in this consolidated action consists of the following: the documents attached to the original complaint [Doc. 5], the amended complaint [Doc. 120] and documents attached thereto in Case No. 1:07-cv-305 and the original complaint [Doc. 4] and the documents attached thereto in Case No. 1:08-cv-255.

4

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Id., at 556, 127 S.Ct. 1955. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Ibid. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.' " Id., at 557, 127 S.Ct. 1955 (brackets omitted).

*Id.* at 1949. In determining whether a complaint states a plausible claim for relief, the Court may draw on its judicial experience and common sense. *Id.* at 1950. Well-pleaded facts that permit the court to infer no more than a mere possibility of misconduct will not permit a complaint to survive a motion to dismiss. *Id.*

The Supreme Court in *Iqbal* suggests a two pronged approach to trial courts' reviewing motions to dismiss. *Id.* First, the court "can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Next, [w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Finally, thrown into this mix is the requisite that a *pro se* pleading must be liberally construed and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson*, 551 U.S. 89, 94 (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

IV. Analysis

Shernard Stewart alleges generally the following: he was employed by Moccasin Bend as a Psychiatric Technician for five and one half years. (Stewart Affidavit attached to Amended Complaint, (Case No. 1:07-cv-305, Doc. 120-1). He received all superior and exceptional evaluations. *Id.* He received only one verbal warning, which occurred in 2002, for not following

5

a doctor's orders. *Id.* Moccasin Bend discharged him on March 29, 2007, allegedly for verbal abuse, threats, and inappropriate conduct directed towards the staff and central office personnel. (Tennessee Dept. of Labor's Dec. 18, 2007 decision attached to original complaint, Case No. 1:07-cv-305, Doc. 5). At some point, the plaintiff filed two charges of discrimination with the Tennessee Human Rights Commission against Moccasin Bend which were subsequently closed on January 3, 2008 after the plaintiff requested right-to-sue letters. (Case No. 1:07-cv-305, Docs. 5-5 and 5-6). He also filed a charge of discrimination against the TCSC which was subsequently closed on August 18, 2008, on the ground that the TCSC had not been Mr. Stewart's employer. (Case No. 1:08-cv-255, Doc. 4-1).

The amended complaint in Case No. 1:07-cv-305 contains some other, very basic allegations which plaintiff sets forth in the respective sections dedicated to specific causes of action. Plaintiff seeks to bring claims under the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*; the Family Medical Leave Act (FMLA) , 29 U.S.C. § 2601 *et seq.*; and Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. § 2000e *et seq.* Plaintiff also seeks to bring a claim under 42 U.S.C. § 1983 for defamation under state law and a claim for deprivation of due process rights in violation of the Fourteenth Amendment. The Court will examine each of these in turn, beginning with the amended complaint in Case No. 1:07-cv-305 before moving to case No. 1:08-cv-255.

    A. Case No 1:07-cv-305

    *1. The Americans with Disabilities Act*

    The plaintiff's complaint alleges the following, *in toto*, regarding his ADA claim:

6

> 1. My federal claim for A.D.A. reinstatement is due to the fact MBMHI
> [Moccasin Bend] approved my A.D.A. on Jan. 24 2007 with knowledge then
> terminated me without mere [sic]. Violation of A.D.A. (black.)

(Amended Complaint ¶ 1, Doc. 120, Case No. 1:07-cv-305) (brackets added, punctuation original). "To state a claim under the ADA, a plaintiff must establish that: '1) he is an individual with a disability; 2) he is 'otherwise qualified' to perform the job requirements, with or without reasonable accommodation; and 3) he was discharged solely by reason of his handicap.'" *Cotter v. Ajilon Servs., Inc.,* 287 F.3d 593, 598 (6th Cir. 2002) (quoting *Monette v. Electronic Data Sys. Corp.*, 90 F.3d 1173, 1178 (6th Cir.1996)). The plaintiff does not identify his disability in this paragraph or anywhere else in the amended complaint. He mentions later that Moccasin Bend's treatment of him has *caused* him an unspecified mental illness but this allegation suggests the mental illness arose after he was terminated from his employment with Moccasin Bend. Further, there is no allegation he was terminated *because* of his unspecified disability. Further, there are no facts alleged from which one could infer such discriminatory intent. Plaintiff's complaint fails to state a claim under the ADA.

### 2. The Family Medical Leave Act

The plaintiff's complaint alleges the following, *in toto*, regarding his FMLA claims:

> 2. Claim of F.M.L.A. son born on May 1, 2006 [sic] MBMHI [Moccasin Bend]
> approved leave on March 29, 2006 then later denied by CEO, William Ventress
> on November 29, 2006. Violation of F.M.L.A. 1993 without mere [sic] (black)
> 3. A claim [sic] self care F.M.L.A. due to fact that MBMHI approved F.M.L.A.
> and on Jan. 24, 2007 with knowledge then terminated me on Feb. 23, 2007
> without mere [sic]. Violation of the F.M.L.A. 1993 (black)

(Amended Complaint, ¶ ¶ 2 & 3, Doc. 120, Case No. 1:07-cv-305) (brackets added, punctuation original). As previously stated by the Court in its July 24, 2009 Memorandum and Order, any

claims for damages against the defendants brought under the self-care provision of the FMLA are barred by the Eleventh Amendment. (*See* July 24, 2009 Memorandum and Order at p. 8, Doc. 118). Any claims for damages and reinstatement brought under the family care provision of the FMLA and for reinstatement brought under the self-care provision of the FMLA are not barred by the Eleventh Amendment. *Id.*

The plaintiff asserts he was granted FMLA leave before the birth of his son on May 1, 2006, but on November 29, 2006, Moccasin Bend CEO William Ventress denied him FMLA leave. The FMLA permits leave of up to 12 weeks taken in one block or intermittently. *Hoffman v. Professional Med Team*, 394 F.3d 414, 418 (6th Cir.2005) (citing 29 U.S.C. §§ 2612(a)(1), 2611(9); 29 C.F.R. §§ 825.800, 825.203(a)). The FMLA, 29 U.S.C. § 2615(a)(1), prohibits an employer from denying an employee leave to which they are entitled under the FMLA. Nearly seven months, well over the 12 week period, elapsed from the time plaintiff's leave was approved to the time it was subsequently denied. The plaintiff has pled no facts to support a general, conclusory allegation that defendants engaged in any wrongdoing by denying further leave on November 29, 2006. Plaintiff's claim alleging defendants wrongfully denied him FMLA leave following the birth of his son fails to state a claim for which relief can be granted.

Plaintiff also alleges that after Moccasin Bend approved his request for FMLA leave for self-care, it terminated him. The FMLA, 29 U.S.C. § 2615(a)(2) prohibits an employer from discharging an employee for exercising his rights under the FMLA. However, there are no allegations that he was discharged *because* he requested FMLA leave and there are no facts

8

alleged to support such an inference. Plaintiff's claim for retaliatory discharge in violation of the FMLA fails to state a claim for which relief can be granted.

### 3. Defamation

As to this claim, the plaintiff states *in toto*,

> Plaintiff meant instead of slander the defamation law of 1983. Also stated this claim at the disclosure [sic] hearing on April 17, 2009 witness Shernard Stewart, Francis Lane, Attorney General. If the court rejects this amendment then I will file another complaint on defamation law.

(Amended Complaint ¶ 6, Doc. 120, Case No. 1:07-cv-305) (brackets added, punctuation original). As previously discussed in the Court's July 24, 2009 Memorandum and Order, the Eleventh Amendment bars all state law claims against the defendants in this case. (*See* July 24, 2009 Memorandum and Order at p. 8, Doc. 118). The plaintiff cannot circumvent this bar by trying to bring a defamation claim under 42 U.S.C. § 1983. 42 U.S.C. § 1983 is a remedial statute which does not itself create independent substantive legal rights. Section 1983 simply provides a vehicle by which a person may recover damages for a violation of his rights secured to him by federal law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995). 42 U.S.C. § 1983 does not cover conduct that allegedly violates state law. *Michael v. Ghee*, 498 F.3d 372, 375 (6th Cir. 2007), *cert. denied*, 128 S.Ct. 2067 (April 21, 2008); *Neinast v. Bd. of Trs. of the Columbus Metro. Library*, 346 F.3d 585, 597 (6th Cir.2003). Thus plaintiff's claim for defamation fails to state a claim for which relief can be granted.

### 4. Title VII - Race Discrimination Claim

Plaintiffs makes the following allegations regarding his Title VII race discrimination claim:

> A claim title VII [sic] MBMHI [Moccasin Bend] discriminated against me after I became in [sic] an interracial relationship because they would not take any of my complaints seriously even though I responded to every accusation that was presented to me. (hand delivered) [sic]. After getting married was harassed [sic] about every little situation and commits [sic] that I made. Was nit picked on time and attendance. Filed workplace harassment complaint on Dec. 15, 2005 which was bias on MBMHI [sic] behalf. Violation of Title VII cause [sic] by race, color (black). I feel because I filed a complaint I was not allowed on MBMHI property on March 2, 2007.

(Amended Complaint ¶ 4, Doc. 120, Case No. 1:07-cv-305) (brackets added, punctuation original). The Court understands the plaintiff to allege that during his employment at Moccasin Bend, he received excellent evaluations and no disciplinary actions, except for one warning in 2002, until he married someone of another race. After his interracial marriage, "they," whom the Court understands to be his supervisors, began to harass him about "every little situation" and he was nit picked on time and attendance. He further alleges he was subsequently terminated from employment after he filed some type of workplace harassment complaint.

To state a claim for a hostile work environment in violation of Title VII, the plaintiff must allege facts establishing the following four elements: (1) he is a member of a protected class, (2) he was subjected to unwelcome harassment, (3) the harassment was based on his protected class, and (4) the harassment created a hostile work environment. *Clark v. United Parcel Service, Inc.*, 400 F.3d 341, 347 (6th Cir. 2005); *Williams v. General Motors Corp.*, 187 F.3d 553, 560 (6th Cir. 1999). Further, in order for the harassment to rise to the level that it violates Title VII, it must be "severe or pervasive" such that "the workplace is permeated with discriminatory intimidation, ridicule, and insult" thereby altering the conditions of the victim's employment and creating an abusive working environment. *Harris v. Forklift Systems, Inc.* 510 U.S. 17, 21 (1993); *Bowman v. Shawnee State University*, 220 F.3d 456, 463 (6th Cir. 2000).

10

Further, the environment must not only be subjectively hostile but also one that a reasonable person would find hostile or abusive. *Id.*

Plaintiff does allege he is a member of a protected class: he is black. But the plaintiff fails to allege facts which rise to the level of severe and pervasive harassment sufficient to create an objectively hostile work environment in violation of Title VII. Thus plaintiff has failed to state a claim for which relief can be granted as to his hostile work environment claim brought under Title VII.

Plaintiff also alleges he was retaliated against by being fired because he filed a race discrimination claim against Moccasin Bend on December 15, 2005. To state a claim for retaliation in violation of Title VII, the plaintiff must allege facts establishing:

> "(1)[he] engaged in activity protected by Title VII; (2) this exercise of protected rights was known to the defendant; (3) the defendant thereafter took an adverse employment action against the plaintiff; and (4) there was a causal connection between the protected activity and the adverse employment action."

*Thompson v. North American Stainless*, LP, 567 F.3d 804, 809 (6th Cir. 2009); *Martin* v. *Toledo Cardiology Consultants, Inc.*, 548 F.3d 405, 412 (6th Cir. 2008). Plaintiff's complaint provides no facts to establish a causal connection between his filing a discrimination complaint against Moccasin Bend and his termination. More than a year elapsed from the time he filed his complaint to the time he was terminated. Plaintiff's claim for retaliation is not plausible.

### 5. Fourteenth Amendment Due Process Claim

The plaintiff's amended complaint alleges the following regarding his Due Process claim:

> Violation of the Fourteenth Amendment [sic] Mr. Ventress was in my discrimination [sic] filed to H.R. Department and the CEO William Ventress still heard my Due Process on March 8, 2007 which is violation [sic] of a Due Process

> Law. Which [sic] was up held on March 13, 2007. Violation Due Process Law (black) [sic].

(Amended Complaint ¶ 5, Doc. 120, Case No. 1:07-cv-305). Plaintiff further alleges that after his termination,

> I was given a 'due process' hearing before the authorizing authority, Mr. William Ventress [on March 8, 2007]. The very act of Mr. Ventress reviewing my case and hearing any evidence I had to defend myself violated my civil rights in that Mr. Ventress was one of those complaining to me that I had been loud, hostile, and threatening to him in a phone conversation we had, which is not true.... Therefore, I had no impartial person making the final decision of termination.

(March 21, 2007 letter to Tara Acton, Human Rights Investigator, Exhibit 3 attached to original Complaint, Doc. 5-3, Case No. 1:07-cv-305).

While the plaintiff states in his amended complaint that he was discharged on February 23, 2007 (Amended Complaint, ¶ 1, Doc. 120, Case No. 1:07-cv-305), the decision by the Tennessee Department of Labor regarding the plaintiff's application for unemployment benefits indicates plaintiff was not officially discharged until March 29, 2007. (*See* Exhibit 4 attached to Original Complaint, Doc. 5-4, Case No. 1:07-cv-305). Further, the plaintiff also states he was on administrative leave at Moccasin Bend from February 26, 2007 to March 23, 2007. *(See* ¶ 8 of Exhibit 2 to Original Complaint, Doc. 5-2, Case No. 1:07-cv-305). The only way to reconcile these confusing statements with one another is to conclude that plaintiff was notified he was going to be discharged on February 23, 2007 but the discharge was not put into effect until March 29, 2007. Thus, I conclude that the hearing plaintiff had before Mr. Ventress on March 8, 2007 was a pretermination hearing.

An individual may have a property interest in public employment thereby giving rise to due process protections under the Fourteenth Amendment of the United States Constitution. *See*

12

*Cleveland Board of Education v. Loudermill*, 470 U.S. 532 (1985), *Gregory v. Hunt,* 24 F.3d 781, 784 (6th Cir. 1994). For purposes of this motion, the undersigned will assume that the plaintiff did have a property interest in employment with Moccasin Bend, an arm of the State of Tennessee, and therefore was entitled to due process pursuant to the Fourteenth Amendment in the manner in which he received a pretermination hearing before his discharge. *See also* Tennessee Rules and Regulations 1120-10-.03(1) ("Career employees have a 'property right' to a position in the classification in which they currently hold career status.")

Plaintiff asserts his pretermination hearing failed to meet due process standards because the hearing officer, William Ventress, was not impartial since Mr. Ventress was one of the persons who had complained about plaintiff's alleged belligerent behavior – the reason for his ultimate discharge. It is firmly settled that for purposes of a *pretermination* hearing, the hearing officer need not be an individual who is completely uninvolved in the underlying matters which have given rise to the decision to terminate the employee's employment. *Loudermill*, 470 U.S. at 545-6, *Duchesne v. Williams,* 849 F.2d 1004, 1006-07 (6th Cir. 1988). The Fourteenth Amendment, prior to termination, requires only that the employee is given notice of the charges against him and an opportunity to be heard. *Id.* The purpose of a pretermination hearing is an opportunity for the employee "to present his side of the story" to the "decisionmaker." *Loudermill*, 470 U.S. at 543, 546; *Duchesne,* 849 F.2d at 1007. "It should be an initial check against mistaken decisions–essentially, a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action." *Loudermill*, 470 U.S. at 545- 46. At the pretermination hearing, "the right to respond before the official responsible for the discharge is sufficient." *Duchesne,* 849 F.2d at 1006. However,

13

where the supervisory official is so biased as to render a pretermination hearing meaningless, then a full adjudicatory style, post-termination hearing should reveal this bias:

> The full, post-termination, adversary, trial-type hearing will serve to ferret out bias, pretext, deception and corruption by the employer in discharging the employee. The adversary processes employed in an adjudicatory, post-termination hearing controlled by an impartial judge lend themselves to proving wrongful conduct by the employer.

*Duchesne,* 849 F.2d at 1008. The plaintiff was given notice of his impending discharge and the opportunity to be heard by CEO William Ventress before his discharge was put into effect. The Fourteenth Amendment required no more, and thus the plaintiff's claim that he was denied due process because Mr. Ventress was not impartial fails to state a claim for which relief can be granted.

### B. Case No. 1:08-cv-255

Plaintiff received a hearing before the TCSC on October 15, 2008 appealing his discharge. Plaintiff asserts the TCSC reached the wrong ruling by upholding his discharge. He further alleges the TCSC "withheld information that would reinstate me by leaving out mee [sic] my witness." (Case No. 1:08-cv-255, Doc. 4). He alleges that the TCSC violated Title VII, the ADA, and the Due Process Clause of the Fourteenth Amendment of the United States Constitution.

#### 1. Title VII and the Americans with Disabilities Act

Since the TCSC was never the plaintiff's employer, plaintiff's claims brought under Title VII and the ADA will be dismissed for failure to state a claim for which relief can be granted. *See* 42 U.S.C. § 2000e-2 (Title VII prohibits employers from discriminating against individuals with respect to hiring, discharge or conditions of employment on the basis of race, color, religion,

14

sex or national origin); 42 U.S.C. §§ 12111(2) & 12112 (Title I of the ADA prohibits discrimination of the basis of disability by a covered entity which is defined as employer, employment agency, labor organization or joint labor-management committee.)

*2. Due Process*

As to the plaintiff's due process claim, the complaint lacks any facts to support this claim. That the TCSC did not allow one witness to testify, without the plaintiff at least identifying the witness, fails to rise to the level of a plausible claim. Further, plaintiff has not sued an official of the TCSC. Under the limited exception to Eleventh Amendment immunity articulated in *Ex Parte Young*, 209 U.S. 123 (1908), plaintiff must sue a state official in his official capacity to avoid the Eleventh Amendment's bar of sovereign immunity. *Mixon v. State of Ohio*, 193 F.3d 389, 397 (6th Cir. 1999); *Aguilar v. Texas Dept. of Criminal Justice,* 160 F.3d 1052, 1054 (5th Cir.1998); *Kossoy v. Maine*, __ F.Supp.2d __, 2009 WL 1916799 *3 n.3 (D.Me. July 1, 2009). In addition, plaintiff had the right pursuant Tenn. Code. Ann. § 4-5-322(b)(1)(A) to seek judicial review of the TCSC's decision in the Chancery Court of Davidson County, Tennessee. Plaintiff does not allege that he did so nor does it appear from the documents he attached to his complaints that he did so. A plaintiff's due process claim will fail where the plaintiff does not allege the state's judicial process is inadequate to correct errors by a state administrative agency. *Meyers v. City of Cinncinnati*, 934 F.2d 726, 731 (6th Cir. 1991); *Nunn v. Lynch*, 2004 WL 2030289 *6 (Sept. 8, 2004).

### *3. Judicial Review of the TCSC's Decision*

Finally, the plaintiff also asserts that the TCSC made the "wrong" decision. Federal court is not the proper forum to review the correctness of a state's personnel decision. As the Supreme Court stated in *Bishop v. Wood*, 426 U.S. 341, 349-50 (1976),

> The federal court is not the appropriate forum in which to review the multitude of personnel decisions that are made daily by public agencies. We must accept the harsh fact that numerous individual mistakes are inevitable in the day-to-day administration of our affairs. The United States Constitution cannot feasibly be construed to require federal judicial review for every such error. In the absence of any claim that the public employer was motivated by a desire to curtail or to penalize the exercise of an employee's constitutionally protected rights, we must presume that official action was regular and, if erroneous, can best be corrected in other ways. The Due Process Clause of the Fourteenth Amendment is not a guarantee against incorrect or ill-advised personnel decisions.

(Internal footnote omitted). While this Court may consider plaintiff's allegations that his termination violated federal law, this Court has no jurisdiction to review the appropriateness or correctness of Moccasin Bend's stated reasons for discharging the plaintiff. *Id.*

### V. Conclusion

For the reasons stated herein, the Court concludes that plaintiff's amended complaint in Case No. 1:07-cv-305 and the complaint in Case No. 1:07-cv-255 fail to state a claim for which relief can be granted. In doing so, the Court offers no opinion as to whether the plaintiff's discharge was warranted for the reasons stated by Moccasin Bend. The Court only concludes that plaintiff has not stated a cause of action based on federal law for his discharge from employment with Moccasin Bend. An appropriate order shall enter.

ENTER:

Dated: September 8, 2009     *s/William B. Mitchell Carter*
                              UNITED STATES MAGISTRATE JUDGE