UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

| | |
|---|---|
| SHERNARD C. STEWART, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 1:07-cv-305 |
| v. | ) Magistrate Judge Carter |
| | ) |
| MOCCASIN BEND MENTAL HEALTH INSTITUTE, | ) |
| | ) |
| Defendant. | ) |

MEMORANDUM and ORDER

I. Introduction

Plaintiff Shernard Stewart and Defendant Moccasin Bend Mental Health Institute (Moccasin Bend) have filed competing motions for summary judgment concerning Plaintiff's sole remaining claim in this action: a claim brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3, alleging Moccasin Bend discharged Plaintiff in retaliation for his having filed a race discrimination claim against Moccasin Bend. (Plaintiff's motion - Doc. 146); Defendant's motion - Doc. 166). The outcome of these motions turns on the existence of a genuine issue of material fact regarding Defendant's legitimate, nondiscriminatory reason for discharging Plaintiff. Since the Court finds there is such a genuine issue of material fact, Plaintiff's and Defendant's respective motions for summary judgment are DENIED.[1]

---

[1]Defendant's motion for summary judgment is entitled "Defendants' Joint Motion for Summary Judgment." [Doc. 166]. Defendant has included the "Civil Service Commission" and Case No. 1:08-cv-255 in the style of the case. The Civil Service Commission is not a party to this action, Case No. 1:07-cv-305. The Tennessee Civil Service Commission was the sole defendant in Case No. 1:08-cv-255 which had been consolidated with this action. However, Case No. 1:08-cv-255 and defendant Tennessee Civil Service Commission were dismissed on February 8, 2010. There

1

II. Relevant Facts

Plaintiff was employed with the Tennessee Department of Mental Health and Developmental Disabilities as a psychiatric technician at the Moccasin Bend Mental Health Institute (Moccasin Bend). Plaintiff was generally responsible for basic patient care. (Plaintiff's Deposition, p. 42-43).[2] Part of Plaintiff's job duties included working well with others. (Plaintiff's dep. at 94).

In July 2002, he was initially suspended for failing to follow a doctor's orders relating to a patient. (Ex. 15 to Plaintiff's dep.; Plaintiff's dep. at 224). He appealed the suspension, and it was reduced to an oral warning. (Ex. 16 to Plaintiff's dep., Plaintiff's dep. at 224-26). There are no other disciplinary incidents until July 20, 2006.

On July 20, 2006, Terry Jones, Security Chief for Moccasin Bend, noticed two cars with their windows down, which was in violation of Moccasin Bend's policy. (Jones Affidavit, Doc.169-8). Jones knew the owner of one vehicle so he called the owner and instructed him to roll up the windows which the owner did. Jones advised a security officer to contact the other owner to ask that the windows be rolled up. *Id.* According to Jones, shortly thereafter, Plaintiff telephoned Jones and began using profanity and demanding to see the policy. *Id.* Jones advised

---

is currently a related case pending before United States District Judge Sandy Mattice against the Tennessee Department of Mental Health based on the same series of events under which this action arises. *See* Case No. 1:09-cv-320. Though deemed related, Case No. 1:07-cv-305 and Case No. 1:09-cv-320 are not consolidated. Whether the outcome in this action should have some *res judicata* or issue preclusion effect on Case No. 1:09-cv-320 is a matter which the defendant in Case No. 1:09-cv-320 may wish to raise with the District Court by appropriate motion.

[2]All references to Plaintiff's deposition shall hereinafter be referred to as Plaintiff's dep. at__). Plaintiff's deposition can be found in the Court record at Doc. 169-1 through 169-3.)

Plaintiff that he would have Plaintiff's supervisor bring him a copy, and Plaintiff responded that he did not need "no damn supervisor to bring me a copy." *Id.* Jones advised the Plaintiff he would not listen to Plaintiff cursing at him and Jones hung up the telephone. *Id.* Jones subsequently met with Plaintiff and Charlynne Parsons, Nursing Executive, in the parking lot to discuss the situation. They showed Jones another vehicle, which Jones had not previously noticed, with the windows down. He advised the owner to roll up the windows. *Id.* While they were still talking outside, the Plaintiff became belligerent with Jones again, and Jones stated he was not going to listen to anymore of Plaintiff's belligerence, and he left. *Id.* Jones drafted a memo describing the event and sent it to Cynthia Honeycutt, Human Resources Director at Moccasin Bend. (Ex. 8 to Plaintiff's dep.). According to Defendant, Plaintiff ultimately received a verbal warning for his conduct. (Ex. 17 to Plaintiff's dep., Doc. 169-6). Plaintiff denies he received a verbal warning for this incident and denies that he was belligerent.

On November 14, 2006, Plaintiff was involved in another incident. Plaintiff had received a letter on November 8, 2006 informing him that he was no longer eligible for leave under the Family Medical Leave Act (FMLA). (Ex. 9 to Plaintiff's dep.; Doc. 169-6). Plaintiff had already been on intermittent leave for the birth of his son, and, according to Moccasin Bend's records, his FMLA leave had expired on July 28, 2006. (Plaintiff's dep. at 161-62; Honeycutt's Affidavit, Doc. 169-15). Plaintiff went to Moccasin Bend's Human Resources Department and met with Nancy Hooper, Personnel Technician, and Holly Metcalf in a small office to discuss his FMLA leave. (Plaintiff's dep. at 163, 168). According to Holly Metcalf, the following occurred: Plaintiff became loud and verbally aggressive and proceeded to badger her and Nancy Hooper. (11/14/2006 Memo from Holly Metcalf to John Monroe, Assistant Superintendent, Ex. 9- to

Plaintiff's dep., Doc. 169-6). Plaintiff did not want to hear how the FMLA rules applied, he continually interrupted them, and he stated that he had recorded previous conversations with Human Resources staff and that Ms. Hooper had a problem with black males. *Id.* Ms. Metcalf "asked Mr. Stewart in a very professional manner to please let us finish what we are trying to explain to him." *Id.* Metcalf told Plaintiff that he will not be allowed to intimidate or verbally badger Human Resources staff. *Id.* Security Chief Jones was sitting outside Ms. Hooper's office and when Plaintiff saw him, Plaintiff reached over and shut the door saying he did not want that man listening to their conversation. *Id.* At the end of the conversation Mr. Stewart apologized to her and Ms. Hooper. *Id.* This incident was not the first time Plaintiff had used a threatening, intimidating and verbally badgering approach. *Id.*

Plaintiff disputes Ms. Metcalf's version of event during this November 14, 2006 meeting. According to Plaintiff, he was not angry when he went to Ms. Hooper's office, and he denies that he was loud, demanding, and badgered his co-employees in this meeting or that he interrupted them. (Plaintiff's dep. at 172- 173). He also denies he told Ms. Hooper she has a problem with black males and that Metcalf informed him he would not be allowed to intimidate Human Resources staff. (Plaintiff's dep. at 174). He admits he tried to close the door to the small office that the three of them were in when he saw Terry Jones in the hallway, but he stated he attempted to shut the door because he was having a private conversation, and when he was not allowed to shut the door, he left. (Plaintiff's dep. at 174-175).

Following Plaintiff's November 14, 2006 meeting with Metcalf, Metcalf drafted an e-mail to John Monroe, the Assistant Superintendent, describing the event as she recalled it. ((11/14/2006 Memo from Holly Metcalf to John Monroe, Ex. 9 to Plaintiff's dep., Doc. 169-6).

On November 17, 2006, CEO William Ventress sent an e-mail to John Monroe and Charlynne Parsons referring to the November 14, 2006 incident and stating, "I expect him [Shernard Stewart] to get some form of discipline."

Thereafter, in a letter dated November 27, 2006, Abigail Hammonds, Assistant Nursing Executive, wrote Plaintiff that based on the events of July 20, 2006 and November 14, 2006, her letter constituted a written warning which would go in his personnel file. The letter stated he had received a verbal warning for the July 20, 2006 incident and "on November 14, 2006, you had another occurrence of this type of loud, argumentative and threatening behavior." The letter further stated that he has "failed to maintain a satisfactory and harmonious working relationship with your fellow employees. This conduct is unbecoming a state employee and is unacceptable." (Hammonds' letter to Plaintiff, Ex. 17 to Plaintiff's dep., Doc. 169-7).

On November 30, 2006, Plaintiff wrote a letter addressed to, "To Whom It May Concern" and sent copies to "Nashville, William Ventress, Charlynne Parsons, and Cynthia Honeycutt." In the letter, Plaintiff stated he was writing to file a discrimination charge against Moccasin Bend alleging that Moccasin Bend was discriminating against him because of a hearing disability caused by his landscaping business. He elaborated that loud lawn mowers had damaged his hearing and prevented him from realizing how loudly he speaks. (Plaintiff's Nov. 30, 2006 letter, Doc. 169-7). On December 15, 2006, Plaintiff filed an official complaint with the Tennessee Department of Mental Health and Developmental Disabilities alleging racial harassment and discrimination by senior administration at Moccasin Bend based on the disciplinary actions taken against him. (March 19, 2007 letter from Sonny Slate, Workplace Harassment Investigator, to William Ventress. Doc. 173). Sonny Slate from the Tennessee

Department of Mental Health and Developmental Disabilities came to Moccasin Bend in mid-January 2006 and early February 2006 to investigate Plaintiff's allegations. During this investigation, Slate interviewed 19 persons including Plaintiff. (March 19, 2007 letter from Sonny Slate to William Ventress, Doc. 173; March 19, 2007 letter from Sonny Slate to Shernard Stewart, Doc. 173).

On January 18, 2007, Plaintiff received his Performance Evaluation. (Ex. 4 to Plaintiff's dep., Doc. 169-5). The "Overall Evaluation and Recommendation" for Plaintiff's job performance was ranked as exceptional in all categories, a number 5 on a scale of 1 to 5 with 5 being the highest possible score and 1 being the lowest. In the category of Co-operating with co-workers, he received a 5 which is deemed " exceptional." (1/18/07 Performance Evaluation, Doc. 172-16). The evaluation is signed by the Plaintiff and Plaintiff's supervisor whose name is not legible. This evaluation comports generally with Plaintiff's other annual evaluations in which he received either a "superior" or "exceptional" overall evaluation. (*See* July 2002 Overall Evaluation - Superior, Doc. 176. January 2003 Overall Evaluation - Superior, Co-operating with Co-workers- Superior, Doc. 173-7. January 2004 Overall Evaluation - Exceptional, Cooperates with Co-workers- Exceptional, Doc. 176-1. January 2005 Overall Evaluation -Superior, Co-operating with Co-workers - Good, Doc. 165-5. January 2006 Overall Evaluation - Superior, Co-operating with Co-workers - Superior, Doc. 169-5).

On January 18, 2007, Abigail Hammonds, Assistant Nursing Executive, gave Plaintiff a written warning for being one hour late to work on January 9, 2007 and two hours late to work on January 16, 2007. Plaintiff disputes the appropriateness of these warnings. (Plaintiff's dep. at 122-125).

Thereafter, Moccasin Bend CEO William Ventress sent a letter dated January 30, 2007 to Plaintiff. (January 30, 2007 letter, Doc. 108-1). The letter stated that Plaintiff's 2007 performance evaluation would be treated as an "interim" evaluation because it did not include the warnings he had received regarding his behavior unbecoming a state employee and regarding his time an attendance. (January 30, 2007 letter, Doc. 108-1; Ventress Affidavit, Doc. 169-11). Plaintiff called Ventress to discuss the decision. (Ventress Affidavit). Ventress tried to explain to Plaintiff why he was treating the performance evaluation as an interim review. (Plaintiff's dep. at 186-88). Plaintiff then tried to explain to Ventress why he thought the warnings were wrong. (Plaintiff's dep. at 188). Ventress told Plaintiff that he needed to address those issues with Human Resources or his supervisor because Ventress was not there to talk about the validity of the warnings. (Plaintiff's dep. at 189-90). According to Ventress, Plaintiff became increasingly argumentative with Ventress to the point that it was bordering on insubordination. (Ventress Affidavit). Plaintiff disputes that he was argumentative. (Plaintiff's dep. at 191.)

Sometime in February, prior to February 23, 2007, Plaintiff telephoned Scott Lindsey, Assistant Director of Human Resources for the Tennessee Department of Mental Health and Developmental Disabilities regarding the complaint he had filed on December 15, 2006. (Lindsey Affidavit, Doc. 169-10). Plaintiff expressed his dissatisfaction about the speed of the investigation into his complaint. Mr. Lindsey tried to explain the investigation procedure to Plaintiff. *Id.* According to Lindsey, at that point, Plaintiff told Lindsey that Lindsey needed to help him because they are both black. *Id.* Plaintiff also told Lindsey to "be mindful that what goes around comes around," and Lindsey, who was aware that Plaintiff had threatened other individuals, took the statement to be another threat. *Id.* Lindsey reported this conversation to

Ventress. *Id.* Plaintiff denies he made these comments and that he threatened Mr. Lindsey. (Plaintiff's dep. at 195-196).

Because of what he saw as "a pattern of escalating threatening behavior," and because Ventress saw Plaintiff as "a threat to the harmonious work environment," Ventress ultimately decided to terminate Plaintiff's employment. (Ventress Affidavit, Doc. 169-11). By letter dated February 23, 2007, Ventress notified Plaintiff of his intent to terminate his employment. The letter also informed Plaintiff he had a right to a hearing. (Ex. 10 to Plaintiff's dep.; Ventress Affidavit). On March 8, 2007, Mr. Ventress held a hearing concerning his intent to discharge the Plaintiff. (March 5, 2007 e-mail from Melissa Harper to Shernard Stewart and March 21, 2007 letter from Shernard Stewart to Tara Acton; Doc. 172-8). On March 13, 2007, plaintiff received a letter from Moccasin Bend stating he would be discharged effective March 23, 2007. (Plaintiff's answer to Interrogatory No. 3, Doc. 173-3).

## II.     STANDARD OF REVIEW

Under Fed. R. Civ. P. 56, the Court will render summary judgment if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. The burden is on the moving party to show conclusively no genuine issue of material fact exists, *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994); *Kentucky Div., Horsemen's Benev. & Prot. Assoc., Inc. v. Turfway Park Racing Assoc., Inc.*, 20 F.3d 1406, 1411 (6th Cir. 1994), and the Court must view the facts and all inferences drawn therefrom in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *In re: Julian Co.,* 44 F.3d 426, 429 (6th Cir. 1995); *City Management Corp. v. U.S. Chemical Co., Inc.*, 43 F.3d 244, 250 (6th Cir. 1994).

Once the moving party presents evidence sufficient to support a motion under Rule 56, the nonmoving party is not entitled to a trial merely on the basis of allegations. The nonmoving party may not rest on its pleadings, but must come forward with some significant probative evidence to support its claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Lansing Dairy*, 39 F.3d at 1347; *Horsemen's Benev.*, 20 F.3d at 1411; *see also Guarino v. Brookfield Tp. Trustees*, 980 F.2d 399, 404-06 (6th Cir. 1992) (holding courts do not have the responsibility to search the record *sua sponte* for genuine issues of material fact). The Court determines whether sufficient evidence has been presented to make the issue of fact a proper question for the trier of fact; the Court does not weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Schreiber v. Moe*, 596 F.3d 323, 334 (6th Cir. 2010); *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435-36 (6th Cir. 1987). If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323.

### III. Discussion

Plaintiff brings this action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3, alleging he was retaliated against by being fired because he filed a race discrimination claim against Moccasin Bend on December 15, 2005.

There are two ways a plaintiff can establish a prima facie case of retaliation in violation of Title VII.

> "A plaintiff in a Title VII or ADEA action may establish retaliation either by introducing direct evidence of retaliation or by proffering circumstantial evidence that would support an inference of retaliation." Imwalle, 515 F.3d at 543. Direct

evidence is evidence, which if believed, does not require an inference to conclude that unlawful retaliation motivated an employer's action. Id. at 543-44. Instead, direct evidence "requires the conclusion that unlawful retaliation was a motivating factor in the employer's action." Abbott v. Crown Motor Co., 348 F.3d 537, 542 (6th Cir.2003) (emphasis omitted).

*Spengler v. Worthington Cylinders*, __F.3d__, 2010 WL 2900317 (6th Cir. July 27, 2010).

To state a claim for retaliation in violation of Title VII using circumstantial evidence, requires facts establishing:

> "(1)[plaintiff] engaged in activity protected by Title VII; (2) this exercise of protected rights was known to the defendant; (3) the defendant thereafter took an adverse employment action against the plaintiff; and (4) there was a causal connection between the protected activity and the adverse employment action."

*Thompson v. North American Stainless, LP*, 567 F.3d 804, 809 (6th Cir. 2009); *Martin* v. *Toledo Cardiology Consultants, Inc.*, 548 F.3d 405, 412 (6th Cir. 2008).

Once a plaintiff has established his prima facie case, the burden of production then shifts to the employer to proffer a "legitimate, nondiscriminatory reason" for its actions. *McDonnell Douglas*, 411 U.S. at 802, *Spengler*, __F.3d__, 2010 WL 2900317 *6. "As long as an employer has an honest belief in its proffered nondiscriminatory reason for discharging an employee, the employee cannot establish that the reason is pretextual simply because it is ultimately shown to be incorrect." *Majewski v. Automatic Data Processing, Inc.*, 274 F.3d 1106, 1117 (6th Cir. 2001). "An employer has an honest belief in its reason for discharging an employee where the employer reasonably relied on the particularized facts that were before it at the time the decision was made." *Id.* (citing *Smith v. Chrysler Corp.*, 155 F.3d 799, 806-07 (6th Cir. 1998)). If the defendant meets this burden, the presumption of discrimination created by the prima facie case falls away and Plaintiff must prove by a preponderance of the evidence Defendant's

legitimate nondiscriminatory reason was merely a pretext for discrimination. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142- 43 (2000).

To establish the Defendant's reason was pretext, Plaintiff must generally show the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct. *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 576 (6th Cir. 2003)(en banc); *Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1021 (6th Cir.2000). Plaintiff "must produce sufficient evidence from which the jury could reasonably reject the defendant's explanation and infer that the defendants intentionally discriminated against him." *Upshaw v. Ford Motor Co.*, 576 F.3d 576, 586 (6th Cir. 2009). "[T]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Reeves,* 530 U.S. at 143; *DiCarlo v. Potter*, 358 F.3d 408, 414-415 (6th Cir. 2004).

In the instant motion, the Defendant moves straight to the last step in the sequential analysis of a retaliation claim and asserts Plaintiff cannot meet his burden to show that Moccasin Bend's legitimate reason for discharging Plaintiff is pretext. Moccasin Bend assert Mr. Ventress discharged Plaintiff because of behavior unbecoming a state employee including an inability to get along with other employees. Plaintiff challenges Moccasin Bend's legitimate, nondiscriminatory reason on the ground that it has no basis in fact, that the reason proffered did not actually motivate his discharge, and that his conduct was insufficient to warrant his dismissal. Plaintiff disputes that he engaged in aggressive, argumentative, and insubordinate conduct. Plaintiff has also submitted for the Court copies of his annual evaluations, including the review given just before his dismissal. All reviews, including the one given in January 2007, are either

11

superior or exceptional. The evidence indicates Mr. Ventress was aware of Plaintiff's December 15, 2006 complaint of racial discrimination against him and Moccasin Bend. Further, Mr. Ventress notified Plaintiff of his intent to discharge him shortly after nineteen people at Moccasin Bend were interviewed concerning Plaintiff's complaint of racial discrimination.

There is significant evidence to support the defendant's legitimate, nondiscriminatory reason for the Plaintiff's discharge, and Defendant asks the Court to discount Plaintiff's version of events and the inferences raised by evidence submitted by the Plaintiff (and Defendant) on the ground that Plaintiff is not credible. The Court does not weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter in ruling upon a motion for summary judgment, even when there are some inconsistencies in the nonmovant's account. *Schreiber v. Moe*, 596 F.3d 323, 344 (6th Cir. 2010. For purposes of summary judgment, inconsistencies in a plaintiff's account go to the weight of plaintiff's testimony, not its admissibility. *Id.* at 334-35 (citing *Hawkins v. Anheuser-Busch, Inc.*, 517 F.3d 321, 340 (6th Cir.2008)). Plaintiff has presented enough evidence to the Court to raise a genuine issue of material fact as to the reason for his termination, and, therefore, Defendant's motion for summary judgment shall be denied. Plaintiff's motion for summary judgment will likewise be denied because Moccasin Bend has presented evidence to support a legitimate, nondiscriminatory reason for Plaintiff's discharge, which, if believed by the trier of fact, will entitled Defendant to judgment.

## IV. Conclusion

A genuine issue of material fact exists as to whether Defendant's legitimate, nondiscriminatory reason for Plaintiff's discharge is pretextual. Therefore, summary judgment in this case is not appropriate. Plaintiff's and Defendant's respective motions for summary

judgment are DENIED. This case shall proceed to trial on the single claim brought under Title VII that Moccasin Bend discharged plaintiff because he filed a racial discrimination complaint against Moccasin Bend.

SO ORDERED.

*s/William B. Mitchell Carter*
UNITED STATES MAGISTRATE JUDGE